UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID MACEY and<br>EDWIN PAGAN III,<br><br>                Defendants. | **SEALED SUPERSEDING<br>INDICTMENT**<br><br>S1 24 Cr. 641 (JHR) |

## COUNT ONE
### (Conspiracy to Bribe a Public Official)

The Grand Jury charges:

### Overview

1.　　From in or about October 2018 through in or about January 2020, DAVID MACEY and EDWIN PAGAN III, the defendants, and others known and unknown, paid and assisted in paying bribes to a senior-level special agent ("Agent-1") with the Drug Enforcement Administration ("DEA") in return for Agent-1 providing nonpublic, confidential DEA information in breach of Agent-1's official duties. MACEY, who was a criminal defense attorney based in Florida, and a private investigator that worked with MACEY ("Investigator-1") paid bribes to Agent-1 using methods designed to conceal MACEY's own connection to the bribe payments. PAGAN, while employed as a DEA task force officer and a local police detective, participated in the bribery conspiracy by, among other things, acting as an intermediary for tens of thousands of dollars that MACEY and Investigator-1 paid to Agent-1 in order to conceal direct links between the bribe payors and the bribe payments.

2.　　In return for the bribe payments provided by DAVID MACEY, the defendant, and others, including payments facilitated by EDWIN PAGAN III, the defendant, Agent-1 provided

nonpublic, confidential DEA information to MACEY and Investigator-1 in breach of Agent-1's official duties so that MACEY and Investigator-1 could use that confidential DEA information in furtherance of MACEY's legal practice, including to recruit and represent criminal defendants.

### The Defendants

3.      At all times relevant to this Indictment:

a. DAVID MACEY, the defendant, was a criminal defense attorney based in Coral Gables, Florida.

b. EDWIN PAGAN III, the defendant, was a detective with a local Florida police department. From in or about November 2010 through in or about October 2021, PAGAN was a task force officer with the DEA. A task force officer is a state or local law enforcement officer who works full-time with the DEA and is deputized to exercise federal authority.

c. Agent-1 was a special agent with the DEA. From in or about June 2014 until on or about June 23, 2019, Agent-1 served as a group supervisor in the DEA's Miami Field Office. From on or about June 23, 2019, through at least on or about November 18, 2019, Agent-1 worked at DEA headquarters in Washington, D.C.

d. Investigator-1 was a special agent with the DEA from in or about 1997 until his retirement in or about November 2018. After retiring from the DEA, Investigator-1 worked as a private investigator primarily for criminal defense attorneys, including for MACEY.

### Background on DEA Policies and Standards of Conduct

4.      The DEA maintains a Personnel Manual that contains Standards of Conduct for DEA employees. At all times relevant to this Indictment, the Standards of Conduct barred the "improper use of nonpublic information to further [an employee's] own private interest or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure.

2

Non-public information includes DEA sensitive information (e.g., information that may compromise an ongoing investigation . . . .)."

5.    At all times relevant to this Indictment, the DEA Standards of Conduct also listed certain conduct that constituted "Misuse of Official Position," including:

a.    "Using his/her official position for private gain;"

b.    "Glean[ing] or garner[ing] information not available to the general public and us[ing] that information for nonofficial purposes. This includes conducting a search in a database that an employee has access to due to his/her employment with DEA;" and

c.    "Distribut[ing] or disclos[ing] information not available to the general public for nonofficial purposes."

6.    At all times relevant to this Indictment, the DEA administered and maintained a computer database called the Narcotics and Dangerous Drugs Information System, or NADDIS, which contained records and reports on individuals, including those who were or had been under investigation or associated with an investigation by the DEA. The information in NADDIS was confidential and DEA policy prohibited DEA agents from sharing this information except with other law enforcement agents.

**MACEY, Investigator-1, and PAGAN Funneled Bribe Payments to Agent-1**

7.    In or about November 2018, shortly after Investigator-1 retired from the DEA and started working with DAVID MACEY, the defendant, MACEY and Investigator-1 began providing payments and other things of value to Agent-1. That month, MACEY and Investigator-1 made a $2,500 payment to Agent-1. This payment was funneled from MACEY to Agent-1 through a series of transactions involving Investigator-1 and Agent-1's close family member. On

or about November 13, 2018, Agent-1 sent a text message to MACEY confirming, in sum and substance, that Agent-1 had received the $2,500 payment.

8.    In connection with the bribery scheme, EDWIN PAGAN III, the defendant, conspired with DAVID MACEY, the defendant, and Investigator-1 to funnel tens of thousands of dollars of bribe payments to Agent-1.  In particular, in or about January 2019, MACEY and PAGAN arranged for the transfer of approximately $50,000 to Agent-1's close family member. While MACEY and PAGAN paid Agent-1's close family member, as they well understood, the funds were, in fact, for the benefit of Agent-1 and were used towards the down payment for a condominium purchased by Agent-1 (the "Condominium") in Agent-1's own name.

9.    In connection with the transfer of the $50,000 for the down payment on the Condominium, on or about January 17, 2019, at approximately 12:20 p.m., DAVID MACEY, the defendant, sent EDWIN PAGAN III, the defendant, a text message inviting PAGAN to a restaurant in Coral Gables, Florida, where MACEY said he would be with Agent-1 and Investigator-1. PAGAN responded by text message that he would attend.  At approximately 2:13 p.m.—less than two hours after MACEY invited PAGAN to the Coral Gables restaurant—PAGAN withdrew a $50,000 cashier's check from a bank located within walking distance of the restaurant.  The $50,000 cashier's check was made out to Agent-1's close family member but was used towards the down payment on the Condominium.  In order to further conceal the fact that the $50,000 was a bribe payment from MACEY that was routed through PAGAN, Agent-1 subsequently misrepresented the source of the $50,000 payment to Agent-1's mortgage provider.

10.    On or about April 16, 2019, in furtherance of the bribery conspiracy and in an attempt to develop another source of DEA confidential information, DAVID MACEY, the defendant, and Agent-1 traveled to the Southern District of New York, and, during this trip,

attended a New York Yankees game with another high-ranking DEA supervisor, and then went to dinner. MACEY paid for both the tickets to the New York Yankees game and the dinner.

11.    Prior to the Yankees game, DAVID MACEY, the defendant, and Agent-1 exchanged text messages in which MACEY told Agent-1 that he had bought the tickets to the game "so that [the DEA supervisor] would not be disappointed." A few months later, in or about October 2019, after the DEA supervisor was promoted to a supervisory position in Mexico, Agent-1 sent a celebratory text message to Investigator-1 stating that "[w]e about to own Mexico," and sent a similar text message to MACEY stating that "[w]e are going to Mexico." MACEY responded, "holy shit."

12.    In addition, between in or about April 2019 and in or about June 2019, Investigator-1 wrote two checks totaling approximately $20,750 to a company (the "Shell Company") controlled by EDWIN PAGAN III, the defendant, which were deposited into bank account nominally held by the Shell Company (the "Shell Company Bank Account"). The $20,750 was deposited in two checks, one for $10,000 and one for $10,750. PAGAN established the Shell Company Bank Account in or about February 2019 to provide Agent-1 with access to this bribe money, while concealing that Agent-1 in fact controlled the funds. In or about January 2019, when Agent-1 instructed PAGAN, in substance and in part, not to include other names on the Shell Company Bank Account when opening it, PAGAN responded, in substance and in part, that he needed to rewatch "[O]zark," a television show about money laundering. In or about February 2019, soon after PAGAN opened the Shell Company Bank Account, PAGAN provided the username and password for the account to Agent-1, even though PAGAN was the only individual formally associated with the Shell Company and the only named signer on the Shell Company Bank Account. After PAGAN provided Agent-1 with the username and password for the Shell

Company Bank Account, Agent-1 subsequently used the Shell Company Bank Account, with PAGAN's knowledge, to purchase airline tickets for himself on multiple occasions between in or about July 2019 and in or about October 2019.

### Agent-1 Provided Confidential, Non-Public DEA Information In Return for the Bribes

13.    Shortly after DAVID MACEY, the defendant, and Investigator-1 began making bribe payments to Agent-1 beginning in or about November 2018, Agent-1 began leaking nonpublic, confidential DEA information from NADDIS and other nonpublic DEA sources to MACEY and Investigator-1 so that MACEY and Investigator-1 could use that confidential information to recruit and represent criminal defendants, including targets of DEA investigations. In particular, on numerous occasions either MACEY or Investigator-1 asked Agent-1 to look up information in NADDIS and share the results, in violation of Agent-1's duties to the public and the DEA. Agent-1 also provided MACEY and Investigator-1 with the identities of individuals who were expected to be charged in confidential grand jury proceedings, the anticipated timing of indictments and arrests, and the identities of individuals who had been arrested before information regarding those arrests became publicly available.

14.    In furtherance of the bribery conspiracy, DAVID MACEY, the defendant, and Investigator-1 regularly communicated with Agent-1 in order to solicit confidential, nonpublic DEA information from Agent-1. For example:

a.    On or about February 25, 2019, Investigator-1 sent Agent-1 a text message containing the name and birthdate of an individual ("Individual-1") and asked Agent-1 if he could "run this guy." Agent-1 and Investigator-1 spoke by phone the next day.

b.    On or about April 11, 2019, MACEY sent Agent-1 a text message containing the name of an individual ("Individual-2") and told Agent-1 to "[l]et me know what

you think about this guy" who had been "arrested 1 month ago." Shortly thereafter, MACEY and Agent-1 spoke via telephone for several minutes.

        c.      Several months later, on or about August 8, 2019, MACEY asked Agent-1 to "check if the writ was placed for [a witness] to obtain the testimony against [Individual-1 and Individual-2]." Approximately an hour and a half later, Agent-1 and MACEY again spoke via telephone for several minutes

        d.      On or about August 7, 2019, MACEY sent Agent-1 a screenshot containing information about one of MACEY's clients ("Client-1") and then stated that "[t]his is the guy that may want me to come to DC." Agent-1 responded, "Ok[.] Give me a few[.]" Approximately two hours later, Agent-1 searched for information regarding Client-1 in NADDIS. Later that same day, Agent-1 and MACEY spoke via telephone for several minutes.

        15.      In connection with the bribery conspiracy, DAVID MACEY, the defendant, and Agent-1 also discussed Agent-1's efforts to influence subjects of DEA investigations to retain MACEY as their attorney. For example, on or about June 17, 2019, MACEY texted Agent-1 to state, in sum and substance, that MACEY was frustrated that an individual that was the subject of a DEA investigation had retained a different attorney rather than MACEY, despite the fact that MACEY had provided bribe payments to Agent-1. In response, Agent-1 then explained that the other attorney had previously represented this particular individual, to which MACEY responded, "Wow. Sorry got confused. I thought that was the fresh air that was coming." Agent-1 then said, "No way. But there is meat there we have been working on for u and him. It is necessary to share."

        16.      On or about July 4, 2019, Agent-1 reminded Investigator-1, in sum and substance, during a telephone call that it was necessary to work with DAVID MACEY, the defendant, because

MACEY was providing bribe payments to Agent-1. During that telephone conversation, Investigator-1 complained about working with MACEY, to which Agent-1 responded, "you gotta get through this." When Investigator-1 stated he preferred working with a different attorney, Agent-1 replied, in substance and in part, that this other attorney did not "bring anything to the table," unlike MACEY.

## STATUTORY ALLEGATIONS

17.    The allegations contained in paragraphs 1 through 16 of this Indictment are repeated and realleged as if fully set forth herein.

18.    From at least in or about October 2018 through in or about January 2020, in the Southern District of New York and elsewhere, DAVID MACEY and EDWIN PAGAN III, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, bribery, in violation of Title 18, United States Code, Section 201(b)(1)(C).

19.    It was a part and an object of the conspiracy that DAVID MACEY and EDWIN PAGAN III, the defendants, and others known and unknown, directly and indirectly, would and did corruptly give, offer, and promise something of value to a public official, and offer and promise a public official to give something of value to another person and entity, with intent to induce such public official to do an act and omit to do an act in violation of the lawful duty of such official, in violation of Title 18, United States Code, Section 201(b)(1)(C).

### Overt Acts

20.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

8

           a.      On or about November 12, 2018, DAVID MACEY, the defendant, wrote a $5,000 check to a company that Investigator-1 controlled (the "Investigative Company") and, approximately two days later, Investigator-1 wrote a check from the Investigative Company for $2,500 to a company co-owned by a close family member of Agent-1, for the benefit of Agent-1.

           b.      On or about November 13, 2018, MACEY sent Investigator-1 by electronic message the name of an individual, which Investigator-1 then sent to Agent-1 by electronic message. On or about November 15, 2018, Agent-1 queried the name that had been provided by Investigator-1 in NADDIS and then called Investigator-1 shortly thereafter.

           c.      On or about January 17, 2019, EDWIN PAGAN III, the defendant, communicated by text message with MACEY about PAGAN attending a meeting at a restaurant (the "Restaurant") in Coral Gables, Florida, with Agent-1 and Investigator-1, in furtherance of the bribery conspiracy.

           d.      On or about January 17, 2019, PAGAN attended a meeting at the Restaurant with MACEY, Agent-1, and Investigator-1.

           e.      On or about January 17, 2019, less than two hours after PAGAN agreed to meet at the Restaurant, PAGAN withdrew a $50,000 cashier's check from a bank located within walking distance of the Restaurant. The $50,000 cashier's check was made out to Agent-1's close family member but was used towards the down payment on the Condominium for the benefit of Agent-1. Agent-1 subsequently misrepresented the source of the $50,000 payment to Agent-1's mortgage provider.

           f.      On or about January 29, 2019, PAGAN and Agent-1 discussed by text message the formation of the Shell Company, which PAGAN would use to funnel benefits to Agent-1 in furtherance of the bribery conspiracy.

g.    On or about February 14, 2019, PAGAN established the Shell Company Bank Account for the purpose of funneling funds to Agent-1 in furtherance of the bribery conspiracy.

h.    On or about February 14, 2019, PAGAN sent the username and password for the Shell Company Bank Account to Agent-1 via electronic message.

i.    On or about April 16, 2019, in furtherance of the bribery conspiracy, MACEY and Agent-1 traveled to the Southern District of New York, and, during this trip to the Southern District of New York, MACEY provided Agent-1 with things of value, including tickets to a New York Yankees game and an expensive dinner. During the game, Agent-1 sent electronic messages containing pictures from the Yankees game to Investigator-1, who was located outside of the Southern District of New York at the time.

j.    On or about April 22, 2019, Investigator-1 wrote a check for $10,000 from the Investigative Company to the Shell Company Bank Account, which PAGAN controlled, and from which Agent-1 received things of value.

k.    On or about June 5, 2019, Investigator-1 wrote a check for $10,750 from the Investigative Company to the Shell Company Bank Account, which PAGAN controlled, and from which Agent-1 received things of value.

l.    On or about June 17, 2019, MACEY and Agent-1 discussed via text message Agent-1's efforts to influence DEA investigative subjects to retain MACEY as their attorney.

m.    On or about July 16, 2019, Investigator-1, while in the Southern District of New York, spoke by telephone with Agent-1, who was located outside of the Southern District of

New York at the time, regarding law enforcement sensitive information that Agent-1 was providing to Investigator-1 in breach of Agent-1's official duties.

        n.      On or about October 7, 2019, Agent-1 purchased a personal airline ticket using the Shell Company Bank Account.

        o.      On or about November 14, 2019, MACEY sent Agent-1, by text message, a screenshot of a document containing information about a client in order to solicit nonpublic, confidential DEA information from Agent-1 regarding that client.

(Title 18, United States Code, Section 371).

<b>COUNT TWO</b><br/><b>(Bribery of a Public Official)</b>

The Grand Jury further charges:

21.      The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of this Indictment are repeated and realleged as if fully set forth herein.

22.      From at least in or about October 2018 through in or about January 2020, in the Southern District of New York and elsewhere, DAVID MACEY and EDWIN PAGAN III, the defendants, directly and indirectly, corruptly gave, offered, and promised something of value to a public official, and offered and promised a public official to give something of value to another person and entity, with intent to induce such public official to do an act and omit to do an act in violation of the lawful duty of such official, to wit, MACEY, PAGAN, and others provided things of value to Agent-1, a DEA employee and supervisor, in exchange for Agent-1 sharing nonpublic, confidential DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting MACEY and Investigator-1 with cases involving charged defendants, in violation of Agent-1's duties as a DEA employee.

11

(Title 18, United States Code, Sections 201(b)(1)(C) and 2).

## COUNT THREE
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury further charges:

23.     The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of this Indictment are repeated and realleged as if fully set forth herein.

24.     From at least in or about October 2018 through in or about January 2020, in the Southern District of New York and elsewhere, DAVID MACEY and EDWIN PAGAN III, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

25.     It was a part and an object of the conspiracy that DAVID MACEY and EDWIN PAGAN III, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and to deprive the public and the DEA of their intangible right to the honest services of Agent-1, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, Agent-1, MACEY, PAGAN, Investigator-1, and others known and unknown agreed that Agent-1 would share nonpublic, confidential DEA information in violation of Agent-1's lawful duty, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assist MACEY and Investigator-1 with cases involving charged defendants in exchange for bribes paid by MACEY and others, using PAGAN as an intermediary, and did

12

transmit and cause to be transmitted interstate email and telephonic communications, to and from the Southern District of New York and elsewhere, in furtherance of the scheme.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR
### (Honest Services Wire Fraud)

The Grand Jury further charges:

26.     The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of this Indictment are repeated and realleged as if fully set forth herein.

27.     From at least in or about October 2018 through in or about January 2020, in the Southern District of New York and elsewhere, DAVID MACEY and EDWIN PAGAN III, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and to deprive the public and the DEA of their intangible right to the honest services of Agent-1, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MACEY and others, using PAGAN as an intermediary, paid bribes to Agent-1 in return for Agent-1, in violation of Agent-1's lawful duty, providing nonpublic, confidential DEA information to, among others, MACEY and Investigator-1, so that MACEY and Investigator-1 could use that information to recruit and represent criminal defendants, including targets of DEA investigations, and transmitted and caused to be transmitted interstate email and telephonic communications, to and from the Southern District of New York and elsewhere, in furtherance of the scheme.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT FIVE
**(Perjury)**

The Grand Jury further charges:

28.     The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of this Indictment are repeated and realleged as if fully set forth herein.

29.     On or about November 6, 2023, in the Southern District of New York, EDWIN PAGAN III, the defendant, while under oath (and in any declaration, certification, verification and statement under penalty of perjury as permitted under Title 28, United States Code, Section 1746) in a proceeding before and ancillary to a court of the United States, to wit, a criminal trial before the United States District Court for the Southern District of New York, docket number 22 Cr. 281, knowingly made a false material declaration and made and used other information, including any book, paper, document, record, recording, and other material, knowing the same to contain any false material declaration, to wit, PAGAN falsely testified under oath that the January 2019 cashier's check in the amount of $50,000 that PAGAN paid to Agent-1's close family member was an "investment" when, in truth and in fact, PAGAN knew that the check was a bribe payment to Agent-1 that Agent-1 used as his down payment for the Condominium, including through the false testimony underlined below:

Q: Did there come a time when you invested money in a property that was purchased by [Agent-1]?

A: <u>Yes.</u>

. . .

Q: So in January of 2019, you wrote a $50,000 cashier's check to [Agent-1's close family member], right?

A: Yes.

14

Q: That's [Agent-1's close family member] right?

A: Yes.

Q: And this money, though, was intended for [Agent-1]; is that right?

A: <u>It was an investment in a house.</u>

. . .

Q: So you discussed how much of the house you would own, right?

A: No, I didn't have any formal conversations about anything. <u>It was basically an</u>
<u>investment, and . . . so there was no formal agreement. It was an investment and once the</u>
<u>house was sold, we'll figure it out then</u>.

(Title 18, United States Code, Section 1623.)

## COUNT SIX
### (Perjury)

The Grand Jury further charges:

30.    The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of

this Indictment are repeated and realleged as if fully set forth herein.

31.    On or about November 6, 2023, in the Southern District of New York, EDWIN

PAGAN III, the defendant, while under oath (and in any declaration, certification, verification and

statement under penalty of perjury as permitted under Title 28, United States Code, Section 1746)

in a proceeding before and ancillary to a court of the United States, to wit, a criminal trial before

the United States District Court for the Southern District of New York, docket number 22 Cr. 281,

knowingly made a false material declaration and made and used other information, including any

book, paper, document, record, recording, and other material, knowing the same to contain any

false material declaration, to wit, PAGAN falsely testified under oath about an invoice to

Investigator-1 for a 2019 transfer of $10,000 to the Shell Company Bank Account that PAGAN

falsely stated was an investment when, in truth and in fact, PAGAN knew that the payment was a bribe payment to Agent-1, including through the false testimony underlined below:

Q: Officer Pagan, do you recognize [Government Exhibit 503]?

A: Yes.

Q: What is it?

A: This is an invoice I wrote out to [Investigator-1] for $10,000 which as the investment of the risk management company we were going to start, specifically office space.

. . .

Q: Was the $10,000 payment a bribe for [Agent-1]?

A: No.

(Title 18, United States Code, Section 1623.)

## COUNT SEVEN
### (Perjury)

The Grand Jury further charges:

32.    The allegations contained in paragraphs 1 through 16 and 20(a) through 20(o) of this Indictment are repeated and realleged as if fully set forth herein.

33.    On or about November 6, 2023, in the Southern District of New York, EDWIN PAGAN III, the defendant, while under oath (and in any declaration, certification, verification and statement under penalty of perjury as permitted under Title 28, United States Code, Section 1746) in a proceeding before and ancillary to a court of the United States, to wit,  a criminal trial pending before the United States District Court for the Southern District of New York, docket number 22 Cr. 281, knowingly made a false material declaration and made and used other information, including any book, paper, document, record, recording, and other material, knowing the same to contain any false material declaration, to wit, PAGAN falsely testified under oath about a 2019

16

transfer of $10,750 to the Shell Company Bank Account that PAGAN falsely stated was for work

he had performed for Investigator-1 when, in truth and in fact, PAGAN knew the payment was a

bribe to Agent-1, including through false testimony underlined below:

Q: Officer Pagan, do you recognize [Government Exhibit 506]?

A: Yes.

Q: What is it?

A: It's an invoice for work I did, addressed to [Investigator-1], that I did for

[Investigator-1].

Q: And who created this invoice?

A: I did.

Q: What was this invoice for?

A: It was for a case that [Investigator-1] was working that he had.  It was a bribery case,

and he had a lot of documents to go through, so he asked me to help him.

. . .

Q: And did [Investigator-1] pay the invoice?

A: Yes.

Q: How much did he pay?

A: $10,750.

Q: And was that $10,750 a payment for a bribe to [Agent-1]?

A: No.

(Title 18, United States Code, Section 1623.)

## COUNT EIGHT
### (Perjury)

The Grand Jury further charges:

34.    The allegations contained in paragraphs 1 through 16 and 20(a) through 20(n) of this Indictment are repeated and realleged as if fully set forth herein.

35.    On or about November 6, 2023, in the Southern District of New York, EDWIN PAGAN III, the defendant, while under oath (and in any declaration, certification, verification and statement under penalty of perjury as permitted under Title 28, United States Code, Section 1746) in a proceeding before and ancillary to a court of the United States, to wit, a criminal trial pending before the United States District Court for the Southern District of New York, docket number 22 Cr. 281, knowingly made a false material declaration and made and used other information, including any book, paper, document, record, recording, and other material, knowing the same to contain any false material declaration, to wit, PAGAN falsely testified under oath that certain 2019 payments from the Shell Company Bank Account reflected money that PAGAN owed Agent-1 for a car and tires when, in truth and in fact, PAGAN knew the payments were bribes to Agent-1, including through the false testimony underlined below:

Q: [I]s this a summary of the transactions from your [Shell Company] bank account?

A: Yes.

Q: And do you see three line items for flights from American Airlines?

A: Yes.

Q: Who purchased those flights?

A: We had a conversation because I owed [Agent-1] money for the car and for the tires and I said I'll – just whenever you come down, I'll take care of your flights.

Q: Who did you have that conversation with?

18

A: [Agent-1].

Q: And did you have an understanding of why [Agent-1] was purchasing these flights?

A: Yes.

Q: Why was he purchasing them?

A: It was repaying for the car, the insurance, and the tires.

(Title 18, United States Code, Section 1623.)

## FORFEITURE ALLEGATIONS

36.     As a result of committing the offenses alleged in Counts One through Four of this Indictment, DAVID MACEY and EDWIN PAGAN III, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

## Substitute Asset Provision

37.     If any of the above-described forfeitable property, as a result of any act or omission of DAVID MACEY and EDWIN PAGAN III, the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p); and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

_____
FOREPERSON

Danielle Sassoon
_____
DANIELLE R. SASSOON
United States Attorney