```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
UNITED STATES OF AMERICA                                     :
                                                             :
          -v.-                                               :   S2 24 Cr. 641 (JHR)
                                                             :
DAVID MACEY, and                                             :
EDWIN PAGAN III,                                             :
                                                             :
                         Defendants.                         :
                                                             :
-------------------------------------------------------------x
```

**GOVERNMENT'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

MATTHEW PODOLSKY
Acting United States Attorney

Mathew Andrews
Emily Deininger
David Markewitz
Assistant United States Attorneys
- Of Counsel

The Government respectfully submits this memorandum of law in opposition to defendants David Macey's and Edwin Pagan III's (together, "defendants") motion to transfer venue to the Southern District of Florida ("Mot.").[1] Defendants' motion presents no factors justifying a departure from the general rule that a criminal prosecution should be retained in the original district where the case was charged and the only district where certain of the charges could have been brought. Defendants can and will get a fair trial here in the Southern District of New York; indeed, they do not contend otherwise. Their motion to transfer venue should be denied.

## BACKGROUND

On or about February 11, 2025, a grand jury in the Southern District of New York returned an eight-count Superseding Indictment, S1 24 Cr. 641 (JHR) (the "Indictment"), charging defendants Macey and Pagan. Both defendants were charged with (i) conspiring to bribe a public official, from in or about October 2018 through in or about January 2022, in violation of 18 U.S.C. § 371 (Count One); (ii) substantive bribery of a public official, during the same time frame, in violation of 18 U.S.C. §§ 201(b)(1)(C) and 2 (Count Two); (iii) conspiring to commit honest services fraud, during the same time frame, in violation of 18 U.S.C. § 1349 (Count Three); and (iv) substantive honest services wire fraud, during the same time frame, in violation of 18 U.S.C. §§ 1343, 1366, & 2 (Count Four). Pagan was additionally charged with four counts of committing perjury, on or about November 6, 2023, in violation of 18 U.S.C. § 1623, based on testimony that he provided when called as a defense witness at the trial of two of defendants' co-conspirators,

---

[1] The Government had understood, perhaps mistakenly, that the Court had approved the parties' proposed briefing scheduled for the venue transfer motion that called for the Government's response to be filed on or before April 21, 2025. (Dkt. 44 at 1). While the Court recently granted the Government until April 22, 2025, to file any response (Dkt. 50), the Government is filing this response consistent with the parties' original agreed-upon schedule in an abundance of caution.

2

John Costanzo and Manny Recio (Counts Five through Eight).[2]

As described in the Indictment, the defendants, together with Costanzo, Recio, and others, conspired to pay Costanzo, who was then a senior-level special agent with the Drug Enforcement Administration ("DEA") in return for Costanzo providing nonpublic, confidential DEA information in breach of Costanzo's official duties. (Dkt. 28 ¶ 1). Macey, a criminal defense attorney based in Florida, and Recio, a retired DEA agent who worked as a private investigator for Macey, used Pagan as a conduit for tens of thousands of dollars in bribe payments. (*Id.* ¶¶ 1, 3). The bribe payments included Macey's purchase of New York Yankees tickets and payment for a subsequent expensive dinner, during a trip by both Macey and Costanzo to the Southern District of New York, in connection with their attempt to turn another senior-level DEA agent into a source of information. (*Id.* ¶¶ 10-11, 20(i)). Other bribe payments included $2,500 funneled from Macey to Costanzo through Costanzo's close family member (*id.* ¶ 7); $50,000 that Macey transferred via Pagan and that same family member for use towards the down payment for a condominium purchased by Costanzo (*id.* ¶¶ 8-9); and more than $20,000 that Macey and Recio funneled to Costanzo through a bank account nominally held by Pagan (*id.* ¶ 12).

In return for the payments provided by Macey and Recio, including payments facilitated by Pagan, Costanzo provided nonpublic, confidential information regarding DEA targets and investigations from the DEA's Narcotics and Dangerous Drugs Information System ("NADDIS") database, the identities of individuals that were expected to be charged in grand jury proceedings, the anticipated timing of indictments and arrests, and the identities of individuals who had been

---

[2] For clarity, Costanzo is referred to in the Indictment as "Agent-1" and Recio is described as "Investigator-1." Because defendants referred to them by name in their motion, the Government also does so here.

3

arrested before information regarding those arrests became publicly available. (*Id.* ¶¶ 2, 13-16). On at least one occasion, Recio, while in the Southern District of New York, spoke by telephone with Costanzo regarding sensitive law-enforcement information that Costanzo was providing in breach of his official duties. (*Id.* ¶ 20(m)).

In or about May 2022, a grand jury in the Southern District of New York returned a five-count indictment against Costanzo and Recio, charging them based on their participation in the above-described scheme with bribery conspiracy, substantive bribery charges, honest services wire fraud, and honest services wire fraud conspiracy. *United States v. Costanzo*, et al., 22 Cr. 281 (JPO) (Dkt. 1). Trial commenced on October 23, 2023, and the jury returned guilty verdicts on all counts on November 8, 2023.[3] During the trial, the Government called fifteen witnesses, including five from the Southern District of New York, five from the Southern District of Florida, and five from various other locations across the United States. Pagan testified as a witness for the defense, during which he lied under oath, as described in the Indictment, about his involvement in the bribery scheme and the bribery payments between Macey and Costanzo that he facilitated. (Dkt. 28 ¶¶ 29, 31, 33, & 35).

## DISCUSSION

### I. Legal Standard

"As a general rule a criminal prosecution should be retained in the original district" where the case was charged. *United States v. Posner*, 549 F. Supp. 475, 477 (S.D.N.Y. 1982) (internal quotation marks and citation omitted); *see also United States v. Kirk Tang Yuk*, 885 F.3d 57, 74 n.5 (2d Cir. 2018). Discretionary transfers are governed by Federal Rule of Criminal

---

[3] Costanzo's and Recio's appeals of their convictions are pending before the Second Circuit.

Procedure 21(b), which provides that, "for the convenience of parties and witnesses, and in the interest of justice, the court upon motion of the defendant may transfer the proceeding as to that defendant or any one or more of the counts thereof to another district." Fed. R. Crim. P. 21(b). The "burden is on the moving defendant to justify a transfer under Rule 21(b)." *United States v. Spy Factory, Inc.*, 951 F. Supp. 450, 464 (S.D.N.Y. 1997) (internal quotation marks and citation omitted). That burden "is not often or easily met," as the defendant must show that trial in the original district "would be so unduly burdensome that fairness requires the transfer to another district." *United States v. Larsen*, No. 13 Cr. 688 (JMF), 2014 WL 177411, at *2 (S.D.N.Y. Jan. 16, 2014) (internal quotation marks and citation omitted); *see also United States v. Calk*, No. 19 Cr. 366 (LGS), 2020 WL 703391, at *2 (S.D.N.Y. Feb. 12, 2020) (same).

In *Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240 (1964), the Supreme Court set forth a list of factors that courts routinely consider in analyzing a defendant's motion to transfer: (1) location of defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket condition of each district involved; and (10) any other special elements that might affect the transfer. *Spy Factory*, 951 F. Supp. at 455 (citing *Platt*, 376 U.S. at 244). "No one of these considerations is dispositive, and it remains for the court to try to strike a balance and determine which factors are of greatest importance." *United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d Cir. 1990) (internal quotation marks and brackets omitted).

Generally speaking, "there has been a 'trend in recent years away from granting transfers.'" *United States v. Blondet*, No. 16 Cr. 387 (JMF) 2019 WL 5690711, at *2 (S.D.N.Y.

5

Nov. 4, 2019) (quoting *United States v. Quinn*, 401 F. Supp. 2d 80, 85-86 (D.D.C. 2005) (citing cases and treatises)). And for good reason. This trend recognizes that, since the time that *Platt* was decided in 1964, "the massive expansion of technology and the relative decline in costs for long-distance travel over the past few decades" have greatly reduced the circumstances where transfer is justified. *Id.* (quoting *Quinn*, 401 F. Supp. 2d at 86).

## II. Discretionary Transfer of Venue is Not Appropriate

In this case, the relevant *Platt* factors do not justify deviation from the "general rule" that "a criminal prosecution should be retained in the original district" where the case was charged, *Posner*, 549 F. Supp. at 477. While a trial outside the defendants' district of residence will inconvenience the defendants, this factor standing alone is insufficient to merit a transfer. Transferring the case would require relocation of the Government attorneys and agents, as well as witnesses and evidence, imposing significant burdens on all parties. Because all of the *Platt* factors besides the defendant's place of residence are neutral or weigh against transfer, this motion should be denied.

### A. Residence of the Defendants

While there is no dispute that the defendants reside in the Southern District of Florida, this fact alone does not justify transfer. It is well-established that "the inconvenience of having to stand trial outside of one's home district, without more, is insufficient to warrant a transfer," *United States v. Coriaty*, No. 99 Cr. 1251 (DAB), 2000 WL 1099920, at *2 (S.D.N.Y. Aug. 7, 2000) (internal quotation marks and citation omitted), and a defendant's residence, standing on its own, "'has no independent significance in determining whether transfer to [a different] district would be 'in the interest of justice,'" *United States v. Christian*, No. 12 Cr. 41 (KBF), 2012 WL 1134035, at *1 (S.D.N.Y. Apr. 2, 2012) (quoting *Platt*, 376 U.S. at 245). That is because a defendant's

6

desire to be tried in his district of residence is "in tension with the more general presumption that a criminal prosecution should be retained in the original district." *Spy Factory*, 951 F. Supp. at 464 (internal quotation marks and citation omitted).

Defendants argue that trying their case outside of Miami would separate them from their families and community ties, and inconvenience them in light of their familial caretaking and business obligations. (Mot. at 7-8). Macey in particular points to the circumstances surrounding his autistic son. (Mot. at 4).

Macey's claims of inconvenience are difficult to reconcile with his regular international travel schedule. According to Customs and Border Patrol records, Macey traveled internationally approximately 7 times in 2021, 2 times in 2022, 6 times in 2023, and 8 times in 2024. While many of these trips were short, in 2023, Macey left the country for approximately 15 days and, in 2024, he left the country for approximately a week.

Indeed, while Macey asserts that is has been "difficult finding trusted people to care for [his son]," he does not assert that it is not possible. (*Id.*). Macey concedes that his child attends school, (*id.*), does not explain why his wife, family friends, or private caregivers are unavailable, (*id.*), and the Government anticipates that its case-in-chief will not last longer than two weeks. The anticipated duration of any disruption here—which would occur regardless of where the defendants are tried—is not nearly so long as in other cases where motions to transfer have been denied. *See, e.g.*, *United States v. Quattrone*, 277 F. Supp. 2d 278, 279 (S.D.N.Y. 2003) ("While the defendant resides in the Northern District of California and while I credit and am empathetic to a distressing family situation, the trial is only scheduled to last two weeks and I do not find these factors to be dispositive"); *United States v. Milton*, No. 21 CR. 478 (ER), 2021 WL 5304328, at *8 (S.D.N.Y. Nov. 15, 2021) ("While the Court is sympathetic to Milton's family member's health

7

problems and the fact that he is an important caretaker for his family member, 09/15/2021 Hr'g Tr. at 27:2-13, he has not demonstrated that he would be unable to retain caretaker help if his family member were to remain in Utah or at the family's second home in Arizona, or in the alternative that his family member would be unable to travel to and access medical care in New York."); *Stein*, 429 F. Supp. 2d at 645-46 (denying a motion to transfer where the trial was anticipated to last between six and eight months); *Wilson*, 2001 WL 798018, at *3 (denying a motion to transfer where trial was estimated to last six to eight weeks).[4]

Moreover, Macey and Pagan will be unable to conduct their ordinary household and business responsibilities no matter where the trial takes place given "the need to be in court every day, [and] the evenings and weekends are usually consumed analyzing the evidence that has been admitted and preparing for the remainder of the trial." *United States v. Wilson,* No. 01 Cr. 53, 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001); *see United States v. Rubin/Chambers*, No. 09 CR 1058 VM, 2011 WL 102695, at *2 (S.D.N.Y. Jan. 3, 2011) ("Further, while the Court is not unsympathetic to the burden that Rubin may face in being separated from his family, the Court must also recognize that, given the realities and exigencies associated with any trial, Rubin will not likely be available to provide his current level of support for his wife or family regardless of where the trial is held"). Accordingly, the benefits to the defendants from conducting the trial in the Southern District of Florida are minimal at best.

---

[4] Moreover, the Indictment alleges that defendant Pagan voluntarily traveled to the Southern District of New York and knowingly committed perjury in a trial in this District for the purpose of influencing the outcome of the prior trial proceedings. (Dkt. 28 ¶¶ 29, 31, 33, & 35). Pagan cannot now complain that he is inconvenienced in having to proceed in this district when he knowingly and voluntarily left his residence in Florida to commit perjury in this district.

B. **Location of Witnesses**

The location of witnesses who are likely to be called at trial does not weigh in favor of transfer.

A defendant claiming that this factor warrants a transfer of venue bears the burden of "specifically describ[ing] how particular witnesses would be entirely prevented from testifying at trial in the Southern District of New York." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *4 (S.D.N.Y. Oct. 9, 2020); *see also Spy Factory*, 951 F. Supp. at 456 (defendants seeking to transfer venue bear the burden of offering the Court "specific examples of witnesses' testimony and their inability to testify because of the location of trial"). The "naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." *Id.* at 456 (internal quotation marks and citation omitted); *see also United States v. Juncal*, No. 97 Cr. 1162 (JFK), 1998 WL 473949, *5 (S.D.N.Y. Aug. 7, 1998) ("there is no basis to grant the motion to transfer" where defendant fails to make "a specific proffer of testimony from specific witnesses to allow the court to make an informed decision about the importance of these witnesses to [the defendant's] case"). Rather, "the court must rely on concrete demonstrations of the proposed testimony." *Spy Factory*, 951 F. Supp. at 456 (quotations and citations omitted). Moreover, "in this age of easy air travel, this factor is generally much less relevant than it was in 1964, when the Supreme Court decided *Platt*." *United States v. Ebbers*, No. 02 Cr. 1144 (BSJ), 2004 WL 2346154, at *1 (S.D.N.Y. Oct. 18, 2004).

Although the Government has not yet finalized its trial witness list, the Government anticipates that the majority of its witnesses regarding the charged bribery and honest services schemes will be located outside of the Southern District of Florida, similar to the earlier trial of Recio and Costanzo. The relevant witnesses regarding Pagan's perjury charges, moreover, are

9

located in the Southern District of New York, where that testimony occurred.

And while Macey and Pagan assert that they intend to call "numerous" witnesses, "all of whom reside in South Florida" (Mot. 8-9), defendants have not identified any of those witnesses (apart from, potentially, Macey's wife), provided any specificity as to what their likely testimony will be,[5] and have not made any allegation that any such witness would be unable to testify if the trial is held in New York. *See, e.g.*, *United State v. Kolfage*, No. 20 Cr. 412 (AT), 2020 WL 7342796, at *3 (S.D.N.Y. Dec. 14, 2020) (this factor did not support transfer where defendant did not "identify the witnesses or their testimony, nor [did] he offer any details as to why they cannot travel to New York other than that their 'travel expenditures will be costly and burdensome'"); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), 2019 WL 4640232, at *3 (S.D.N.Y. Sept. 24, 2019) ("[T]ransfer is unwarranted based on the mere possibility that unnamed, purported character witnesses will be unable to testify because of the location of the trial."); *Christian*, 2012 WL 1134035, at *2 (this factor did not support transfer where defendants "address[ed] the convenience of the witnesses with conclusory averments" that trial in this district would be less convenient and "d[id] not put forward any evidence that potential witnesses would be unwilling and unable to travel to the Southern District of New York"); *United States v. Brooks*, No. 08 Cr. 35 (PKL), 2008 WL 2944626, at *2 (S.D.N.Y. July 31, 2008) ("bare assertion" of hardship was insufficient to tip this *Platt* factor in favor of transfer); *Stein*, 429 F. Supp. 2d at 646 (location of witnesses did not support transfer where defendants failed to put forward any evidence that potential witnesses would be unable or unwilling to travel to this district).

---

[5] Even with respect to Macey's wife, the only specifically identified potential witness, Macey baldly contends that she is "knowledgeable about many of the facts alleged in the [I]ndictment" (Mot. 9) without providing any "specific proffer" as to what relevant facts she has knowledge of or "concrete demonstrations" of what her proposed testimony would be.

Defendants also suggest that the need for New York-based witnesses will be diminished because there is no dispute regarding the events that occurred in the Southern District of New York. (Mot. 9). Not so. The mere fact that Macey does not plan to dispute those events does not eliminate the Government's burden to establish beyond a reasonable doubt that they occurred. *United States v. Huezo*, 546 F.3d 174, 180 (2d Cir. 2008) ("As with every criminal offense, the government bears the burden of proving each element beyond a reasonable doubt."). And even assuming defendants were willing to stipulate to the relevant events that occurred in the Southern District of New York—something they have not offered to do—the Government is free to decide how to present its case to the jury, whether through witness testimony or stipulation. *See, e.g.*, *Old Chief v. United States,* 519 U.S. 172, 186-87 (1997) (discussing the "familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it.").

For all of those reasons, defendants have failed to meet their burden of showing that the location of witnesses compels a transfer to the Southern District of Florida.

### C. Location of Events

The defendants have also failed to demonstrate that the location of pertinent events in this case compels transfer. They argue that "most, if not all, of the alleged acts and conduct" took place in Florida and that "[t]he case case nothing to do with New York." (Mot. 11). But this is factually incorrect. Defendant Pagan gave multiple hours of perjurious testimony during a two week criminal trial in this district involving charges brought by this Office against the defendants' co-conspirators. (Dkt. 28 ¶¶ 29, 31, 33, & 35). He is now charged with four counts of perjury for his conduct in this district. (*Id.*). It cannot be disputed that this alleged criminal conduct occurred

11

entirely and wholly in the Southern District of New York, a fact that defendants brush aside. Furthermore, as to the bribery and honest services wire fraud scheme, one of the bribes was paid, and accepted, here in this district. (Ind. ¶¶ 16-17 & 20(i)).[6] This payment and acceptance of a bribe is an essential piece of the charged offenses. The events in this district will thus be a significant part of trial, and go far beyond what the defendants misleading characterize as "a single baseball game and a phone call that included neither Mr. Macey nor Mr. Pagan." (Mot. 11-12).

The defendants' co-conspirators conduct was likewise not limited to the Southern District of Florida. Rather, for approximately half of the time period covered by the charged bribey and honest services wire fraud offenses, Costanzo was working at DEA headquarters in Washington, D.C. (Dkt. 28 ¶ 3(c)), and the information he improperly disclosed to Macey and Recio related to, and impacted, cases being investigated and prosecuted in various districts across the United States—including the Southern District of New York. Defendants, in short, appear to ignore that significant events in the charged scheme took place in this district and that the remainder of events were multistate—and even international—in nature. As such, no one forum could accommodate the case exclusively and therefore the constitutional propriety of venue in this district weighs against transfer. *See United States v. Hays*, No. 96 Cr. 51, 1997 WL 34666, at *4 (E.D. Pa. 1997)

---

[6] Even if the Southern District of Florida were deemed to be the primary location of the scheme, this factor would nevertheless be outweighed by the remaining factors in the *Platt* analysis. *See, e.g.*, *Wilson*, 2001 WL 798018, at *2 ("While significant criminal activities are alleged to have occurred in San Francisco, this was not a crime whose planning, execution, or impact was limited by geography."); *United States v. Estrada*, 880 F. Supp. 2d 478, 483 (S.D.N.Y. 2012) (noting that "[t]he majority of 'the events likely to be at issue' are alleged to have occurred in Los Angeles," but concluding that "this factor is not particularly persuasive when defendants are alleged to have intentionally projected their fraud nationwide, including into this District"); *Ebbers*, 2004 WL 2346154, at *1 (finding third *Platt* factor did not weigh in favor of transfer when securities fraud involved national company listed on Nasdaq and Government's case involved conversations with New York entities); *Spy Factory*, 951 F. Supp. at 457 (though the defendant's company was in Texas, his illegal sales were national in scope, making New York an equally appropriate venue).

(proper venue satisfies this factor when events took place in multiple districts); *United States v. Bloom*, 78 F.R.D. 591, 609 (E.D. Pa. 1977) (same).

### D. Location of Documents and Records Likely To Be Involved

As defendants concede (Mot. at 15), the fourth *Platt* factor, the location of documents, does not weigh in favor in transfer, particularly when modern developments in electronics and computing render documents readily available to a defendant wherever he or she is located. *See Brooks*, 2008 WL 2944626, at *2 ("the location of documents and records is not a major concern in these days of easy and rapid transportation"); *United States v. Layne*, No. 05 Cr. 87 (HB), 2005 WL 1009765, at *4 (S.D.N.Y. May 2, 2005); *Coriaty*, 2000 WL 1099920, at *3; *Spy Factory*, 951 F. Supp. at 458. Indeed, as defendants acknowledge, the documents and records have already been collected and brought to this district. (*See* Mot. at 15).

### E. Disruption of Defendant's Business Unless Case Is Transferred

The fifth *Platt* factor, disruption of a defendant's business, does not favor transfer. Defendant Macey complains that his law practice has been "hard hit" and "relies heavily on personal interaction, often requiring jail and prison visits or in-person interviews with current and prospective clients." (Mot. 12). Likewise, defendant Pagan complains that he might receive "unexpected calls from tenants to conduct repairs immediately" or have to cancel "trainings on short notice for a court conference or appearance." (Mot. 13). But apart from the trial itself—which will cause disruption for the defendants regardless of where it occurs—it is unlikely that the defendants will have to appear in this district for more than a limited number of court appearances for pretrial conferences and hearings, which are generally brief and scheduled at least weeks, if not months, in advance.

Moreover, Macey tellingly does not give any details about his law firm's financial status

or how trial in this district would undermine his ability to engage in the practice of law. Indeed, as previously noted, Macey has traveled internationally approximately 23 times during the last four years. It is difficult to ascertain how additional, brief travel to this district would be unduly burdensome. Furthermore, while Macey claims that he needs "as much time as possible working on existing and prospective cases in South Florida," (Mot. 12), his ability to do so will be similarly impacted regardless of where the trial is held. Likewise, Pagan does not explain why he personally must conduct repairs on his rental properties and why he cannot plan his police trainings given that court dates are scheduled months in advance. Indeed, Pagan has already found the time to attend trial in this district once before—notably, when he attended the trial of his coconspirators and knowingly made the false statements that are the basis of the four perjury counts against him.

The defendants' failure to provide any actual *facts* indicating how their businesses would be affected or disrupted means that this factor cannot favor transfer. *See Brooks*, 2008 WL 2944626, at *2 (factor does not weigh in favor of transfer where defendant has "not supplied the Court with any facts indicating how his business, job, or career would be disrupted by trial in this district"). But even if they were to provide such details, a criminal trial in any venue invariably "imposes burdens upon a defendant and brings in its wake dislocation from normal occupational and personal activities," *United States v. United States Steel*, 233 F. Supp. 154, 156 (S.D.N.Y. 1964), and it is unclear why the time spent in New York for a relatively brief trial, during which the Government anticipates its case-in-chief will last approximately two weeks, would be more harmful than trial time spent in Florida. "This is particularly true in the age of cell phones, email, and fax machines." *Coriaty*, 2000 WL 1099920, at *3. This factor does not favor transfer.

14

### F. Expense to the Parties

The sixth *Platt* factor, the expense to the parties, does not favor transfer. Defendant Pagan can prepare for trial with defense counsel without the need for travel because he has retained attorneys for this case in Florida, and the discovery materials produced by the Government were provided electronically. Nor does Macey's voluntary choice to retain New York-based counsel militate in favor of transfer to Florida. Given modern technology such as cellphones and video conferencing, Macey can further prepare for trial without extensive travel to New York because the Government provided discovery materials electronically to Macey as well.[7]

Moreover, the defendants have not claimed they are unable to afford the costs of transportation or lodging for what the Government expects to be a brief, approximately two-week trial. Macey, according to his website, operates an "international law firm,"[8] and has traveled internationally approximately 23 times during the last four years. Defendant Pagan admits that he owns at least four different properties. (Mot. 8). The defendants, who both have retained counsel, do not and cannot assert that they have insufficient funds to cover the cost of trial. *See United States v. Canale*, No. 14 Cr. 713 (KBF), 2015 WL 3767147, at *4 (S.D.N.Y. June 17, 2015) ("The 'expense' factor also weighs against transfer: While defendant has represented that it would cost substantially more to defend this case in New York . . ., he has not estimated his projected expenses and has not alleged that he has insufficient funds to cover them."); *United States v. Riley*, 296

---

[7] Macey suggests that, if the case is transferred to Florida, he will change counsel because "Florida counsel has offered to take Mr. Macey's case pro bono." (Mot. 16 n.16). Assuming that is true, there is nothing prohibiting Macey from having such counsel represent him now, as Macey does not explain why Florida counsel could not appear in this district. Alternatively, should the Court grant the defendants' motion and Macey is unable to secure Florida counsel, then Macey will incur the expense of transporting and housing his New York-based lawyers in Miami.

[8] https://davidmacey.com, last accessed on April 16, 2025.

F.R.D. 272, 277 (S.D.N.Y. 2014) (expense factor generally afforded serious weight only in cases involving indigent defendants).

Furthermore, the defendants' argument ignores entirely the significant expense to the Government of transferring this matter to Florida. Courts in this district have considered expenses the Government would incur as a result of transfer in deciding venue transfer motions. *See Riley*, 296 F.R.D. at 277; *Brooks*, 2008 WL 2944626, at *3; *Spy Factory*, 951 F. Supp. at 459. Although the Government has not finalized its witness list, it anticipates that several Manhattan-based witnesses, as well as the prosecution team, would be forced to relocate to Florida for the duration of the trial. Specifically, the Government would have to relocate several Assistant United States Attorneys and paralegals, and multiple law enforcement agents who investigated this case in the New York area. *See Canale*, 2015 WL 3767147, at *4 (denying transfer where it "would require the Government to transport and house two prosecutors, as well as a paralegal and several case agents"); *Ebbers*, 2004 WL 2346154, at *2 ("It would impose an enormous burden on the government to move the prosecutors, investigators, support staff, court staff, and others familiar with this case . . . to another jurisdiction"); *United States v. Carey*, 152 F. Supp. 2d 415, 422 (S.D.N.Y. 2001) (denying transfer where, *inter alia*, the effect would be "merely to shift the economic burden to the government"). This factor weighs against transfer.

### G. Location of Counsel

The seventh *Platt* factor, the location of counsel, does not favor transfer. Defendant Pagan has chosen to retain counsel in Florida while defendant Macey has chosen counsel in New York. The location of their respective counsel, to the extent it is inconvenient for either defendant, is an inconvenience occasioned solely by each defendant through his choice of respective counsel. For Pagan, the only potential inconvenience would be their appearance for the relatively brief trial in

New York, which hardly is an undue burden. For Macey, the only potential inconvenience would be conducting certain trial preparation electronically and by video.

The defendant's interest in a more convenient venue for his counsel "must be balanced against numerous countervailing considerations," including that "a change of venue would burden the Government, whose attorneys are based in New York." *Pastore*, 2018 WL 395490, at *5. Accordingly, this factor does not weigh in favor of transfer.

### H. Relative Accessibility of Place of Trial

The eighth *Platt* factor, the relative accessibility of place of trial, does not favor transfer. It is not reasonably subject to dispute that Manhattan is one of the most accessible locations in the United States. *See United States v. Percoco*, No. 16 Cr. 776 (VEC), 2017 WL 6314146, at *17 (S.D.N.Y. Dec. 11, 2017) (denying transfer because, *inter alia*, "New York City is clearly an accessible transportation hub"); *Christian*, 2012 WL 1134035, at *2 (denying transfer because, *inter alia*, "New York is easily accessible by air with three major airports, as well as a variety of other public transportation"). Accordingly, to the extent that any witnesses are required to travel from outside of New York to testify, the inconvenience will be minimal. This factor does not favor transfer.

### I. Docket Conditions of the District Courts Involved

The ninth *Platt* factor, the docket conditions of the district courts involved, also does not support transfer. The defendants argue that the Southern District of Florida has fewer criminal cases per judge and lower median time to commencement of a criminal case. But this is irrelevant where, as here, the parties have already proposed a trial date to the Court of mid-October 2025. In fact, a trial date had already been set for August 2025, and it is only because defense counsel requested an adjournment due to a conflict that the trial date will be later.

Moreover, the docket conditions "factor requires consideration of more than the size of the respective dockets or a comparison of the Court's relative expertise. It also is relevant whether the docket reflects investment by one court or the other in the particular case." *United States v. Shvartsman*, No. 23-CR-307 (LJL), 2024 WL 1258393, at *4 (S.D.N.Y. Mar. 25, 2024). This district has already invested substantial resources in this matter in connection with the trial of Pagan and Macey's coconspirators, Recio and Costanzo. Much of the evidence, testimony, and jury instructions in that prosecution are relevant to this matter as well. Additionally, while not binding on this Court, Judge Oetken's rulings in that prosecution are persuasive authority from this district. This too cuts against transfer.

## CONCLUSION

For the reasons set forth above, the defendants' motion to transfer should be denied.

Dated: New York, New York
April 21, 2025

Respectfully submitted,

MATTHEW PODOLSKY
Acting United States Attorney

By:  s/
Mathew Andrews
Emily Deininger
David Markewitz
Assistant United States Attorneys
(212) 637-2472/6526/1920