UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                  :

UNITED STATES OF AMERICA         :

                                  :

         -*v.*-                    :      S2 24 Cr. 641 (JHR)

                                  :

EDWIN PAGAN III,                    :

                                  :

                        Defendant.      :

                                  :

---------------------------------------------------------------x


## GOVERNMENT'S MEMORANDUM OF LAW IN
## OPPOSITION TO DEFENDANT'S PRETRIAL MOTION


JAY CLAYTON
United States Attorney
Southern District of New York

Mathew Andrews
Chris Brumwell
Emily Deininger
Cecilia Vogel
Assistant United States Attorneys
- *Of Counsel* -

The Government respectfully submits this memorandum of law in opposition to defendant Edwin Pagan III's pretrial motions to (1) dismiss the bribery and honest services wire fraud counts (Counts One through Four) against him,[1] (2) dismiss the perjury counts (Counts Five through Eight) against him; and (2) sever his trial on the perjury charges from his trial on the bribery and honest services wire fraud counts.[2] For the reasons set forth below, the Court should deny Pagan's pretrial motions in their entirety.

## **BACKGROUND**

On or about February 11, 2025, a grand jury in the Southern District of New York returned an eight-count Superseding Indictment, S1 24 Cr. 641 (JHR) (the "Indictment"), charging defendant Pagan with (i) conspiring to bribe a public official, from in or about October 2018 through in or about January 2022, in violation of 18 U.S.C. § 371 (Count One); (ii) substantive bribery of a public official, during the same time frame, in violation of 18 U.S.C. §§ 201(b)(1)(C) and 2 (Count Two); (iii) conspiring to commit honest services fraud, during the same time frame, in violation of 18 U.S.C. § 1349 (Count Three); (iv) substantive honest services wire fraud, during the same time frame, in violation of 18 U.S.C. §§ 1343, 1366, & 2 (Count Four); and four counts of committing perjury, on or about November 6, 2023, in violation of 18 U.S.C. § 1623, based on testimony that he provided when he voluntarily appeared as a defense witness at the trial of two of his co-conspirators, John Costanzo and Manny Recio (Counts Five through Eight).[3]

---

[1] Pagan joined motions filed by David Macey to "dismiss the substant[]ive charges," which the Government understands to refer to the bribery and honest services wire fraud counts set forth in Counts One through Four. (Dkt. 71 at 2 n.7).

[2] Pagan also moved to sever his trial from that of co-defendant Macey. (Dkt. 71 at 4). Because the Government entered into a deferred prosecution agreement with Macey on August 28, 2025, the Government believes this motion is moot and has not substantively addressed it.

[3] For clarity, Costanzo is referred to in the Indictment as "Agent-1" and Recio is described as

As described in the Indictment, Pagan, together with Costanzo, Recio, and others, conspired to pay Costanzo, who was then a senior-level special agent with the Drug Enforcement Administration ("DEA") in return for Costanzo providing nonpublic, confidential DEA information in breach of Costanzo's official duties.  (Dkt. 28 ¶ 1).  Pagan was used as a conduit for tens of thousands of dollars in bribe payments.  (*Id.* ¶¶ 1, 3).  The bribe payments included $2,500 funneled from Recio to Costanzo through Costanzo's close family member (*id.* ¶ 7); $50,000 that was transferred via Pagan and that same family member for use towards the down payment for a condominium purchased by Costanzo (*id.* ¶¶ 8-9); and more than $20,000 that Recio funneled to Costanzo through a shell company opened by Pagan called JEM Solutions (*id.* ¶ 12).

In return for this money, including the payments facilitated by Pagan, Costanzo provided nonpublic, confidential information regarding DEA targets and investigations from the DEA's Narcotics and Dangerous Drugs Information System ("NADDIS") database, the identities of individuals that were expected to be charged in grand jury proceedings, the anticipated timing of indictments and arrests, and the identities of individuals who had been arrested before information regarding those arrests became publicly available.  (*Id.* ¶¶ 2, 13-16).

In or about October 2023, Costanzo and Recio proceeded to a jury trial on substantive and conspiracy bribery and honest services wire fraud charges that had been brought against them based on their participation in the above-described scheme.  *See United States v. Costanzo*, et al., 22 Cr. 281 (JPO) (Dkt. 1).  Trial commenced on October 23, 2023, and the jury returned guilty verdicts on all counts on November 8, 2023.[4]  During that trial, Pagan testified as a witness for the defense and lied under oath, as described in the Indictment, about his involvement in the bribery

---

"Investigator-1."

[4] Costanzo's and Recio's appeals of their convictions are pending before the Second Circuit.

scheme and the bribery payments between Macey and Costanzo that he facilitated.  (Dkt. 28 ¶¶ 29, 31, 33, & 35).

In particular, Count Five charges Pagan with lying under oath that a January 2019 cashier's check in the amount of $50,000 that Pagan paid to Costanzo's father was an "investment" when, in truth and in fact, Pagan knew that the check was a bribe payment to Costanzo that Costanzo used as his down payment for a condominium. (*Id.* ¶ 29). Count Six charges Pagan with lying under oath that an invoice to Recio for a 2019 transfer of $10,000 to JEM Solutions was an investment when, in truth and in fact, Pagan knew that the payment was a bribe to Costanzo. (*Id.* ¶ 31). Count Seven charges Pagan with lying under oath that a 2019 transfer of $10,750 to JEM Solutions was for work Pagan had performed for Recio when, in truth and in fact, Pagan knew the payment was a bribe to Costanzo. (*Id.* ¶ 33). Lastly, Count Eight charges Pagan with lying under oath that certain 2019 payments from JEM Solutions reflected money that Pagan owed Costanzo for a car and tires when, in truth and in fact, Pagan knew the payments were bribes to Costanzo. (*Id.* ¶ 35).

## **DISCUSSION**

### I.    **Pagan's Motions to Dismiss Are Meritless**

The Court should deny Pagan's motions to dismiss the charges against him. As set forth below, Pagan's arguments are primarily premature attacks on the sufficiency of the evidence at trial, which are not the proper subject of a motion to dismiss.

### A.  **Relevant Law**

On a pretrial motion to dismiss pursuant to Fed. R. Crim. P. 12(b), the allegations of the indictment must be taken as true.  *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343

n.16 (1952); *United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985).[5]  The law is well settled that "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363 (1956).  The dismissal of an indictment is an "extraordinary remedy reserved only for extremely limited circumstances implicating fundamental rights." *United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001).

"Pursuant to Federal Rule of Criminal Procedure 7, 'the indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *United States v. Vilar*, 729 F.3d 62, 80 n.16 (2d Cir. 2013) (quoting Fed. R. Crim. P. 7(c)(1)).  To satisfy this rule, "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Yannotti*, 541 F.3d at 127; *see also, e.g. United States v. Benjamin*, 95 F.4th 60, 66-67, 73-74 (2d Cir. 2024). "'[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

The Second Circuit has "repeatedly refused, in the absence of any showing of prejudice, to dismiss charges for lack of specificity." *United States v. Walsh*, 194 F.3d 37, 45 (2d Cir. 1999); *accord United States v. Stringer*, 730 F.3d 120, 125 (2d Cir. 2013). While the indictment must give a defendant "sufficient notice of the 'core of criminality' to be proven against him," *United*

---

[5] Unless otherwise noted, case quotations omit internal quotation marks, citations, and previous alterations.

*States v. Pagan*, 721 F.2d 24, 27 (2d Cir. 1983) (quoting *United States v. Sindona*, 636 F.2d 792, 797-98 (2d Cir. 1980)), the "'core of criminality' of an offense involves the essence of a crime, in general terms," and not "the particulars of how a defendant effected the crime." *United States v. D'Amelio*, 683 F.3d 412, 418 (2d Cir. 2012); *see also United States v. Coffey*, 361 F. Supp. 2d 102, 111 (E.D.N.Y. 2005) ("[T]he indictment does not have to specify evidence or details of how the offense was committed.").

"An indictment must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992). "[C]ommon sense and reason prevail over technicalities." *United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001); *see also United States v. Resendiz-Ponce*, 549 U.S. 102, 107 (2007) ("While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1), which provides that an indictment 'shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" (quoting Fed. R. Crim. P. 7(c)(1)) (citation omitted)). Moreover, "[i]t is well settled that in an indictment for conspiring to commit an offense - in which the conspiracy is the gist of the crime - it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Wydermyer*, 51 F.3d 319, 325 (2d Cir. 1995); *see also United States v. LaSpina*, 299 F.3d 165, 177 (2d Cir. 2002). "The rationale is that the crime of conspiracy is complete whether or not the substantive offense which was its object was committed." *Wydermyer*, 51 F.3d at 325.

A motion to dismiss an indictment is not an occasion to evaluate the sufficiency of the Government's evidence. Rule 12(b), which governs criminal pretrial motions, provides only that "[a]ny defense, objection, or request which is capable of determination without the trial of the

general issue may be raised before trial by motion" (emphasis added). "In other words, there is no 'summary judgment' equivalent to Rule 56 of the Federal Rules of Civil Procedure in criminal cases." *United States v. Cremer*, No. 12 Cr. 473 (KBF) (S.D.N.Y. Dec. 13, 2012) (citing *Alfonso*, 143 F.3d at 776-77). Indictments are "not meant to serve an evidentiary function," but rather, "to acquaint the defendant with the specific crime with which he is charged, allow him to prepare his defense, and protect him from double jeopardy." *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007). Accordingly, "at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense." *United States v. Dawkins*, 999 F.3d 767, 780 (2d Cir. 2021). Rather, "[t]hat is something [courts] do after trial." *Id*.

In short, dismissal of the Indictment is a "drastic remedy that should be utilized with caution and only in extreme cases." *United States v. Walters*, 910 F.3d 11, 26 (2d Cir. 2018).

## B. Discussion

### a. The Bribery and Honest Services Wire Fraud Counts

Pagan joined co-defendant Macey's motion arguing that Counts One through Four should be dismissed because the Indictment (i) fails to allege the requisite *quid pro quo*; (ii) fails to allege any violation of a "lawful duty," and (iii) fails to allege each defendant's knowledge of Costanzo's lawful duties. (Dkt. 68 at 6-10). These arguments are meritless and should be dismissed. Counts One through Four "contain the elements of the offense charged and fairly informed [the] defendant of the charge against which he must defend." *Hamling*, 418 U.S. at 117. Pagan does not, and could not reasonably, deny that these counts also adequately inform him of the charge and sufficiently specifies his crime to allow him to plead double jeopardy if he is again prosecuted for it. That is all this Court needs to determine in order to deny the motion. *See Costello*, 350 U.S. at 363; *Dawkins*, 999 F.3d at 780.

The defendant's contrary arguments mischaracterize the Indictment and the case law. Pagan contends that "[t]he indictment fails to allege any *quid pro quo*." Dkt. 68 at 13. But the Indictment repeatedly describes that *quid pro quo*: "*in return for* the bribe payments . . . [Costanzo] provided nonpublic, confidential DEA information . . . in breach of [Costanzo's] official duties so that Macey and [Recio] could use that confidential DEA information in furtherance of Macey's legal practice, including to recruit and represent criminal defendants." (Dkt. 28 ¶ 2 (emphasis added);[6] *see also id.* ¶¶ 22, 25). The existence of a *quid pro quo* is itself an implied element not found in the relevant statutes, but created by case law. And in this Circuit, even that universally recognized requirement for conviction need not be pled in any particular formula. *See, e.g.*, *Benjamin*, 95 F.4th at 74 (explaining that "the phrase "in exchange for' [in the indictment] satisfied the *quid pro quo* requirement . . . because it alleged an unambiguous agreement"); *United States v. Seminerio*, 2010 WL 3341887, at *6 (S.D.N.Y. Aug. 20, 2010) (indictment "need not utter the 'magic words' '*quid pro quo*' or even 'bribe' or 'bribe receiving' "). The Indictment's allegation that Costanzo leaked nonpublic, confidential DEA information in return for bribe payments is more than adequate here.

Pagan nevertheless asserts that the charges against him should be dismissed because there is no apparent connection between the alleged *quids* and the alleged *quos*. (Dkt. 68 at 13). But an indictment need not allege all the supporting facts that will prove its allegations—as the Circuit made clear just last year, on a similar point. *See Benjamin*, 95 F.4th at 73-74. And the question of whether the Government can adequately meet its burden of proving the requisite connection—that the payments were made in exchange for the leaks of nonpublic, confidential DEA information—

---

[6] This second paragraph was incorporated by reference into Counts One through Four, meaning that all the bribery and honest services wire fraud counts contained the "in return for" allegation.

is an evidentiary question for a jury at trial, not a matter for a motion to dismiss.  *See Dawkins*, 999 F.3d at 780 ("at the indictment stage, [courts] do not evaluate the adequacy of the facts to satisfy the elements of the charged offense").  Indeed, the Government need not offer proof of a communication or conversation directly linked a particular *quid* and *quo* at any point in the case, given that "evidence of a corrupt agreement in bribery cases is usually circumstantial, because bribes are seldom accompanied by written contracts, receipts or public declarations of intentions." *United States v. Friedman*, 854 F.2d 535, 553 (2d Cir. 1988).  Moreover, to the extent Pagan suggests that there must be a one-for-one linkage between payments and Costanzo's breaches of his official duties, he is wrong.  *See, e.g., United States v. Silver*, 948 F.3d 538, 554 (2d Cir. 2020) (a bribery scheme can involve "this for these or these for these, not just this for that" (internal quotation marks omitted)).

Pagan's next argument, that the Government cannot proceed on an "as-opportunities-arise" theory, is similarly misguided for three reasons.  First, Pagan's argument that that the Government can only proceed on such a theory if it can prove a "promise to take official action on a particular question or matter" (Dkt. 68 at 7) wrongly presumes that the Government must prove a bribe made for an *official act*, and all of the accompanying implied requirements.  But Pagan was not charged under the official acts provision of the bribery statute; instead, he was charged under Section 201(b)(1)(C), which prohibits bribes paid to induce violations of *lawful duties* of public officials. *See* Dkt. 28 ¶¶ 19, 22 25, 27; *Compare* 18 U.S.C. § 201(b)(1)(A) (official acts); *with* 18 U.S.C. § 201(b)(1)(C) (violations of lawful duties); *see also Valdes v. United States*, 475 F.3d 1319, 1330 (D.C. Cir. 2007) (Kavanaugh, C.J., concurrence) (noting that even though Government had failed to prove defendant had been influenced in an "official act," the decision "will not thwart future prosecution of money-for-information disclosures" because "a covered public official who in

9

violation of *official duty* corruptly provides information in return for something of value commits a federal crime: bribery") (emphasis added). Indeed, none of the cases on which Pagan relies address the requisite showing for a case to succeed on an as-opportunities-arise theory under Section 201(b)(1)(C). *See McDonnell v. United States*, 579 U.S. 550, 574 (2016) (addressing scope of "official act"); *Silver*, 948 F.3d at 553 (same); *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 405 (1999) (addressing gratuities provision).

Second, the cases on which Pagan relies – *McDonnell* and its progeny – do not concern pleading standards. Rather, they are cases about jury instructions. *See McDonnell*, 579 U.S. at 577. Courts thus consistently reject motions to dismiss in these contexts. *See, e.g.*, *United States v. Lee*, 919 F.3d 340, 353, 354-55 (6th Cir. 2019) ("the standard for sufficiency of an indictment is not the same as that for a conviction"; "At a minimum, the indictment supports an inference that Defendant had agreed to perform an official act or pressure or advise other officials to perform official acts in exchange for gifts or loans from [the payor]. Therefore, the indictment sufficiently alleges the elements of Counts One through Four, and [the] district court did not err in denying Defendant's Motion to Dismiss the Indictment." (citation omitted)), *cert. denied*, 140 S. Ct. 895 (2020); *United States v. Goldstein*, No. 21 CR. 550 (DC), 2024 WL 556163, at *14 (E.D.N.Y. Feb. 12, 2024) ("defendants had more than sufficient notice of the core alleged criminality and the specifics of the alleged scheme," even assuming "the government's theory of an 'overarching theory of bribery' could be construed as an as-opportunities-arise theory"); *United States v. Keleher*, 505 F. Supp. 3d 41, 48 (D.P.R. 2020) ("The indictment's allegations satisfy the government's burden at this stage, because they sufficiently notify the defendants of the crimes with which they are charged and would allow them to raise a double jeopardy issue should that become warranted. A jury, not this Court, must determine whether [the charged] actions . . .

constitute an official act or evidence an agreement to take an official act.'" (citations omitted); *United States v. Oaks*, 302 F. Supp. 3d 716, 726 (D. Md. 2018) ("[T]he Defendant argued at the hearing that an honest service indictment must allege everything *McDonnell* requires in jury instructions. . . . This Court finds no basis to extend the full breadth of *McDonnell* to indictments . . . .").

Third, even assuming that there was a requirement that the Indictment particularly allege "the particular question or matter" with respect to which the public official's lawful duties were violated in the Section 201(b)(1)(C) context, that standard would be satisfied here. As the Indictment specifies, Costanzo breached his lawful duties by leaking "nonpublic, confidential DEA information" on occasions where his co-conspirators "could use that confidential information to recruit and represent criminal defendants" in their private investigation and criminal defense professions. *See, e.g.*, Dkt. 28 ¶ 13. Pagan does not address, or even attempt to address, why these allegations do not suffice to allege the particular question or matters with regard to which Costanzo would breach his lawful duties.

Pagan next contends that the bribery Counts must be dismissed because the Indictment does not specifically allege that Costanzo leaked the DEA's nonpublic, confidential information for "nonofficial purposes." (Dkt. 68 at 8-9). But there is no merit to defendant's arguments about further information that should be in the Indictment. Rule 7, not the defendant, sets forth the requirements for what must be contained in an Indictment, namely, "the elements of the offense charged." *Hamling*, 418 U.S. at 117. The Indictment more than adequately alleges the element of the offense charged, which is that Costanzo's provision of information was in breach of his lawful duties. (*See, e.g.*, Dkt. 28 at ¶¶ 1-2, 19, 22, 25, 27). Pagan's contention that the Government must allege how the DEA information was shared for a "nonofficial purpose" in order for there to have

11

been a violation of those duties is (1) no more than a veiled attack on the sufficiency of the evidence, which is improper at this stage of the proceedings, and (2) ignores that, as discussed above, the Indictment does allege the "nonofficial purpose"—to benefit co-conspirators—who were not employed by the DEA or in any law enforcement role—by helping them "recruit and represent criminal defendants" in their private investigation and criminal defense practices (Dkt. 28 ¶¶ 2, 13). Pagan's claim that the Indictment does not say what it literally recites fails on its face, because at this stage of the litigation the Indictment's statements are taken as true, and the defendant's contrary assertion will not be considered.[7] *Benjamin*, 95 F.4th at 66.

Finally, to the extent Pagan argues that these counts should be dismissed because there is no explicit allegation that Pagan was aware of the DEA Standards of Conduct setting forth Costanzo's lawful duties, that argument also fails. (Dkt. 68 at 10). Pagan cites no case law supporting that idea that a bribe payor must have been aware of the specific lawful duty the public official would violate in exchange for the bribe payment, nor is the Government aware of any. And even assuming proof of such knowledge is necessary for the Government to meet its evidentiary burden of establishing the requisite corrupt intent, the idea that the Government must not only prove such knowledge, but include those allegations in the Indictment, finds no support in the law because such knowledge is not an element of the bribery counts.

For all of these reasons, Pagan motion to dismiss Counts One through Four fails.

---

[7] Pagan further ignores, moreover, that the DEA Standards of Conduct prohibit DEA employees from using confidential information or their official position "for private gain" or for their "own private interest,"—which is certainly encompassed by the Indictment's allegations that Costanzo leaked confidential DEA information in exchange for financial benefits—regardless of whether the DEA employee is acting for "nonofficial purposes." *See* Dkt. 28 ¶¶ 4-5.

### b.  The Perjury Counts

Counts Four through Eight also track the language of the charged statutes and state the approximate times and places of the crimes alleged, which is all that is required. *See Stavroulakis*, 952 F.2d at 693 ("An indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." (internal citations omitted)); *see also United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013).  The motion to dismiss these counts should be denied on that basis alone.

Pagan argues that the perjury counts fail as a matter of law because a defendant may not be convicted for perjury on the basis of statements that are literally true, and because the questions were so vague that the Government cannot establish the falsity of the answers. These arguments, however, raise factual questions that a jury must resolve at trial.  "Whether an answer is literally true raises a factual question to be resolved by the jury," *United States v. Forde*, 740 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (quoting *United States v. Lighte,* 782 F.2d 367, 373 (2d Cir.1986)). To hold otherwise would usurp "a core function of the fact-finder at trial." *Forde*, 740 F. Supp. 2d at 413.  "Truth and falsity are questions for the jury in all but the most extreme cases." *Maxwell*, 534 F. Supp. 3d at 319.

Here, Pagan's false statements are not ambiguous, let alone so vague that they constitute an "extreme" case warranting dismissal. Pagan is charged with lying under oath about the purpose of four particular payments. The Government's evidence at trial will show that that these payments were bribes. Pagan falsely testified that these payments were "investments" into a house and risk management company, (Dkt. 28 ¶¶ 29, 31), compensation for helping Recio with "documents to go through," (*id.* at ¶ 33), and "money for [a] car and for the tires," (*id.* at ¶ 35). These are specific false statements with no ambiguity. They are not the type of "completely amorphous" answers that

the Second Circuit has held are insufficient to support a perjury charge. *See Lighte*, 782 F.2d at 376.

Pagan's arguments that the questions that are at issue in the perjury counts were impermissibly vague are similarly without merit. Pagan's points to no specific aspect of the questions that was problematically vague. "When a line of questioning is so vague as to be 'fundamentally ambiguous,' the answers associated with the questions posed may be insufficient as a matter of law to support the perjury conviction." *United States v. Lighte*, 782 F.2d 367, 375 (2d Cir. 1986) (quoting *United States v. Wolfson*, 437 F.2d 862, 878 (2d Cir. 1970)). However, "[c]ourts typically evaluate whether a question was fundamentally ambiguous only after the development of a full factual record at trial." *United States v. Maxwell*, 534 F. Supp. 3d 299, 319 (S.D.N.Y. 2021), *aff'd*, 118 F.4th 256 (2d Cir. 2024) (citing *United States v. Markiewicz*, 978 F.2d 786, 808 (2d Cir. 1992)). *Compare Lighte*, 782 F.2d at 376 (vacating conviction for perjury where "the same word was used for different thoughts in a sequence of questions which gave no indication as to the phrase's meaning, let alone the possibility of differing meanings.") *with Forde*, 740 F. Supp. 2d at 413 ("[T]here is nothing about the Government's question that would make it susceptible to multiple interpretations. [The defendant], if truly confused, could also have asked for clarification. Instead he replied with a strong denial."). There was no such fundamental ambiguity in the Government's questions here.

## II.    Pagan's Motion to Sever the Perjury Counts Is Meritless

The Court should likewise reject Pagan's motion to sever the perjury and bribery charges. Pagan is charged with perjury because he falsely claimed under oath that certain bribes to Costanzo were "investments" or investigative work. The perjury and bribery offenses are inextricably connected and will be proved through the exact same evidence. *See generally Potamitis*, 739 F.2d

at 791. Severing the counts would waste judicial resources by requiring a second trial at which the Government would offer the same proof. The defendant has identified no prejudice sufficient to justify imposing that burden on the Court and the Government.

### A. Relevant Law

Federal Rule of Criminal Procedure 8(a) permits the joinder of offenses that "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). This rule establishes three tests for joinder, each "reflect[ing] a policy determination that gains in trial efficiency outweigh the recognized prejudice that accrues to the accused." *United States v. Turoff*, 853 F.2d 1037, 1042 (2d Cir. 1988).

Charges are "similar" if they are "somewhat alike" or "hav[e] a general likeness to each other." *United States v. Rivera*, 546 F.3d 245, 253 (2d Cir. 2008) (quoting *United States v. Werner*, 620 F.2d 922, 926 (2d Cir. 1980) (internal quotation marks omitted). "Rule 8(a) does not require 'too precise an identity between the character of the offenses.'" *United States v. Pizarro*, No. 17 Cr. 151, 2018 WL 1737236, at *3 (S.D.N.Y. Apr. 10, 2018) (quoting *Werner*, 620 F.2d at 929). Offenses may be joined "where the same evidence may be used to prove each count or if the counts have a sufficient logical connection." *United States v. Page*, 657 F.3d 126, 129 (2d Cir. 2011) (internal quotation marks and citations omitted). "For purposes of analysis under Rule 8(a)," however, "no one characteristic is always sufficient to establish 'similarity' of offenses, and each case depends largely on its own facts." *United States v. Blakney*, 941 F.2d 114, 116 (2d Cir. 1991) (internal quotations and citations omitted). For instance, in *United States v. Werner*, 620 F.2d 922 (2d Cir. 1980), the "Second Circuit found sufficient similarity between two cargo thefts that occurred two years apart and only one of which was violent in nature," because "'both offenses

arose out of [defendant's] scheme to use his position as an insider … to obtain money or property carried by it."' *United States v. Smith*, No. 05 Cr. 922 (DLC), 2007 WL 980431, at *2 (S.D.N.Y. Apr. 3, 2007), *aff'd*, 348 F. App'x 636, 638 (2d Cir. 2009) (first alteration in original) (quoting *Werner*, 620 F2d at 927).

Joinder is also proper for "distinct criminal acts where they originated from a common scheme." *United States v. Ying Lin*, No. 15 Cr. 601 (DLI), 2018 WL 5113139, at *2 (E.D.N.Y. Oct. 19, 2018) (citing *Werner*, 620 F.2d at 927). Specifically in the context of perjury, "[t]he law in this circuit clearly supports the joinder of underlying substantive crimes with perjury counts where, as here, the false declarations concern the substantive offenses." *United States v. Potamitis*, 739 F.2d 784, 791 (2d Cir. 1984); *see United States v. Sweig*, 441 F.2d 114, 118 (2d Cir. 1971). False statements can "concern" or be connected with substantive offenses even if they were not made as part of an investigation into the specific substantive conduct. *See United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990) (joining false statements on loan applications with perjury about "attempts to secure Senate Ethics Committee approval" of "consulting fees'); *United States v. Broccolo*, 797 F. Supp. 1185, 1190-91 (S.D.N.Y. 1992) (joining fraud counts with a false statement in a bankruptcy proceeding). Similarly, "[c]ourts have repeatedly recognized the appropriateness of trying perjury or obstruction charges together with the underlying crimes to which the perjury relates, where proof of the alleged perjury requires proof of knowledge of the underlying crime." *United States v. Butler*, No. 04 Cr. 340, 2004 WL 2274751, at *4 (S.D.N.Y. Oct. 7, 2004) (Lynch, J.) (permitting joinder of defendants under Rule 8(b)).

In the event that properly joined counts "appear[] to prejudice a defendant or the government," Rule 14(a) permits a court to "order separate trials of counts … or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). "[I]n order to prevail" on a Rule 14 motion,

"the defendant must show not simply some prejudice but *substantial* prejudice." *United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) (quoting *Werner*, 620 F.2d at 928). The defendant carries this "heavy burden" because Rule 8(a) already strikes a "balance" between "considerations of economy and speed" and "possible unfairness" to the defendant. *United States v. Amato*, 15 F.3d 230, 237 (2d Cir. 1994). Accordingly, "the principles that guide the district court's consideration of a motion for severance usually counsel denial," *Pizarro*, 2018 WL 1737236, at *5 (alteration, internal quotation marks, and citation omitted), and severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," *Zafiro v. United States*, 506 U.S. 534, 539 (1993).[52] But "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id*. at 538-39. "[L]ess drastic measures … such as limiting instructions, often will suffice to cure any risk of prejudice and permit joinder." *Page*, 657 F.3d at 129 (internal quotation marks omitted).

### B. Discussion

Pagan's perjury counts should be tried jointly with the bribery offenses. *First*, the Government will prove the bribery and perjury offenses with the same evidence. *See United States v. Hester*, No. 19 Cr. 324 (NSR), 2020 WL 3483702, at *21 (S.D.N.Y. June 26, 2020) ("Notably, the fact that evidence of the crime charged in one count may be admissible in the Government's direct case in the trial of the other will typically defeat the need to severe the counts."). Pagan is charged with perjury because he lied under oath about specific bribe payments to Costanzo. Accordingly, to prevail at trial on the perjury charges, the Government must introduce evidence of the bribery counts. The evidence underlying the two sets of charges are the same. *See Sweig*, 441

F.2d at 118-19 ("Virtually every overt act alleged in the conspiracy count formed the subject matter of one of the eight perjury counts, and would therefore be admissible in a perjury trial to show the falsity of Sweig's denial before the grand jury.").

Similarly, Pagan's efforts to conceal his crimes by lying at trial is compelling evidence of his consciousness of guilt as to the bribery offenses and would be relevant and admissible as an opposing party's statements pursuant to Federal Rule of Evidence 801(d)(2)(A) even at a trial just on the those counts. *See, e.g.*, *United States v. Anderson*, 747 F.3d 51, 60 (2d Cir. 2014) ("[A]cts that exhibit a consciousness of guilt, such as false exculpatory statements, may also tend to prove knowledge and intent of a conspiracy's purpose ...." (internal quotation marks and citations omitted)).  Accordingly, there is no rationale in severing, or prejudice in not severing, as the evidence for each set of counts would be admissible and core to the Government's case in any trial on other set of counts.

*Second*, the offenses are logically connected and are part of the same common plan or scheme. It is settled law in this Circuit that joinder of "underlying substantive crimes with perjury counts" is appropriate "where, as here, the false declarations concern the substantive offenses." *Potamitis*, 739 F.2d at 791; *see also United States v. Ruiz*, 894 F.2d 501 (2d Cir. 1992) (same). In *Ruiz*, the defendant was a New York state senator who founded a nonprofit that was developing a mall in the Bronx, and for which he provided consulting services. In 1984 and 1985, he made two loan applications for funds to invest in the project, on which he made false statements. *Id.* at 503-04. In 1986, the defendant also lied about his possession of a letter from the Senate Ethics Committee to a grand jury that was investigating his consulting activities for the nonprofit. *Id.* at 503. He was charged with two counts of false statements on the loan applications and one count of perjury, and he moved to sever the perjury charge. The district court denied the

motion, explaining that, although the "alleged perjury did not occur during a specific investigation by the grand jury into the alleged bank fraud," the statements nonetheless "'concerned the defendant's scheme to maximize his personal gain from the [project], as well to cover any improprieties that scheme might involve.'" *Broccolo*, 797 F. Supp. at 1190 (quoting *United States v. Ruiz*, 702 F. Supp. 1066, 1076-77 (S.D.N.Y. 1989)) (emphasis omitted). And the Second Circuit affirmed, explaining that the counts had "sufficient logical connection" because they all "relate to [the defendant's] extra-senatorial activities through the [nonprofit]," and therefore were "part of a common scheme or plan." *Ruiz*, 894 F.2d at 505.

So too here: Pagan took the stand at his coconspirators' trial and perjured himself before a petit jury to conceal and obfuscate the bribery scheme that he, Costanzo, Recio, and others carried out. *See Broccolo*, 797 F. Supp. at 1190-91 (joining counts involving use of businesses to commit fraud with a count of falsely swearing in bankruptcy court that the defendant "had not engaged in any business activity during the preceding six years"). The false statements thus directly concern the substantive offenses and were part of a common scheme.

*Third*, Pagan has failed to carry his heavy burden under Rule 14(a) to show prejudice. At the outset, "[t]he contention that there is some inherent prejudice in joining perjury and related counts with substantive charges has been widely rejected." *Potamitis*, 739 F.2d at 791. And courts routinely hold that there is no prejudice where the evidence in support of the counts is "interconnected." *Blakney*, 941 F.2d at 116; *see Carson*, 464 F.2d at 436 ("[T]he commonality of proof of the conspiracy and perjury crimes permitted joinder of the offenses … and denial of appellant's Rule 14 pretrial motion for severance."); *Pizarro*, 2018 WL 1737236, at *6-*7. As discussed above, the evidence of the bribery and perjury counts here is closely interconnected; indeed, it is largely identical.

19

Lastly, Pagan's reliance on *Maxwell* is wrong. *United States v. Maxwell*, 534 F. Supp. 3d 299, 320–21 (S.D.N.Y. 2021), *aff'd,* 118 F.4th 256 (2d Cir. 2024). There, Judge Nathan severed perjury charges from the sex trafficking counts against the defendant because the perjury charges (1) "would introduce unrelated allegations of sexual abuse," *id.* 320, that would "require a significant investment of time and resources to provide the requisite context," *id.* at 321; (2) the evidence presented on the sex trafficking counts "may prejudice the jury's ability to fairly evaluate Maxwell's truthfulness in her deposition . . . . given the nature of the allegations involved," *id.* at 321; and (3) a joint trial would "require disqualification of at least one of Maxwell's attorneys from participating as an advocate on her behalf," *id.* None of these considerations are applicable here: there is complete overlap of evidence, there are no inflammatory allegations of sexual abuse, and there is no risk of counsel's being disqualified.

Trying the perjury counts with the bribery counts they concern makes eminent sense. Doing so greatly advances judicial efficiency by avoiding the need for two trials at which the exact same evidence—evidence of the bribes paid and Pagan's statements regarding those bribes—would be presented.

## <u>CONCLUSION</u>

For the reasons set forth above, the defendant's motions for dismissal or in the alternative to sever the perjury from the bribery and honest services wire fraud counts should be denied.

Dated:  New York, New York
        August 29, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:     s/_____
        Mathew Andrews
        Chris Brumwell
        Emily Deininger
        Cecilia Vogel
        Assistant United States Attorneys
        (212) 637-2472 / 6526 / 2477 / 1084